The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| IN RE: HQ SUSTAINABLE MARITIME INDUS., INC., DERIVATIVE LITIGATION | Lead Case No. C11-910 RSL |
|---|---|
| | PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT |
| This Document Relates to:  All Cases | NOTE ON MOTION CALENDAR: Thursday, Sep. 19, 2013 at 10:00 a.m. |
| | ORAL ARGUMENT REQUESTED |

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

# TABLE OF CONTENTS

**Page**

I. BACKGROUND OF THE DERIVATIVE ACTIONS AND SETTLEMENT NEGOTIATIONS ........................................................................................ 3

II. THE SETTLEMENT WARRANTS FINAL APPROVAL............................................... 3

   A. The Standards for Approval of Shareholder Derivative Settlements...................... 3

   B. The Settlement Is Fair, Adequate, and Reasonable ............................................... 4

   C. The Settlement Appropriately Balances the Risks and Benefits ........................... 7

   D. The Settlement Is the Product of Arm's-Length, Mediator-Guided Negotiations Conducted by Experienced Counsel.................................................... 9

   E. The Recommendation of Experienced Counsel Favors Approval....................... 10

III. THE REACTION OF HQSM SHAREHOLDERS SUPPORTS FINAL APPROVAL OF THE SETTLEMENT........................................................................ 11

IV. CONCLUSION............................................................................................................. 12

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL

- i -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Backman v. Polaroid Corp.*,
    910 F.2d 10 (1st Cir. 1990) ............................................................................................... 8

*Cohn v. Nelson*,
    375 F. Supp. 2d 844 (E.D. Mo. 2005) ............................................................................ 3, 7

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ......................................................................................... 10

*Glass v. UBS Fin. Servs., Inc.*,
    No. 06-4068, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F.
    App'x 452 (9th Cir. 2009) ................................................................................................ 10

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ........................................................................................... 6

*Hughes v. Microsoft Corp.*,
    No. 98-1646, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar. 26, 2001)
    (Coughenour, J.) ..................................................................................................... 4, 9, 10

*In re AOL Time Warner S'holder Derivative Litig.*,
    No. 02-6302, 2009 U.S. Dist. LEXIS 124372 (S.D.N.Y. Nov. 9, 2009) ............................ 11

*In re Apple Computer, Inc. Derivative Litig.*,
    No. 06-4128, 2008 U.S. Dist. LEXIS 108195 (N.D. Cal. Nov. 5, 2008) .......................... 5, 8

*In re Apple Computer Securities Litigation*,
    No. 84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991) .......................... 8, 5

*In re Caremark Int'l Inc. Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996) ............................................................................................ 7

*In re Heritage Bond Litig.*,
    No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. June 10, 2005) .................... 10

*In re JDS Uniphase Corp. Sec. Litig.*,
    No. 02-1486, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................................. 8

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................................ 6, 11

*In re Mfrs. Life Ins. Co. Premium Litig.*,
    MDL No. 1109, 1998 U.S. Dist. LEXIS 23217 (S.D. Cal. Dec. 21, 1998) ......................... 8

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL
- ii -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

*In re NVIDIA Corp. Derivative Litig.*,
   No. 06-6110, 2008 U.S. Dist. LEXIS 117351 (N.D. Cal. Dec. 22, 2008) ............................ 3, 7

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................................ 10

*In re Oracle Sec. Litig.*,
   852 F. Supp. 1437 (N.D. Cal. 1994) ....................................................................................... 5

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) .......................................................................................... 3, 7, 10

*In re Pfizer Inc. S'holder Derivative Litig.*,
   780 F. Supp. 2d 336 (S.D.N.Y. 2011) .................................................................................... 7

*In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*,
   227 F.R.D. 553, 567 (W.D. Wash. 2004) (Rothstein, J.) ........................................................ 9

*In re Rambus Inc. Derivative Litig.*,
   No. 06-3513, 2009 U.S. Dist. LEXIS 131845 (N.D. Cal. Jan. 20, 2009) ............................. 11

*In re Walt Disney Co. Derivative Litig.*,
   907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006) ............................................. 7

*MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*,
   797 F.2d 799 (9th Cir. 1986) .................................................................................................. 3

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) ................................................................................................... 6

*Officers for Justice v. Civil Serv. Comm'n of S.F.*,
   688 F.2d 615 (9th Cir. 1982) ........................................................................................ 3, 4, 7, 10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................................. 6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23.1 ....................................................................................................................... 3

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL
- iii -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

Plaintiffs Alan Hopkins, Gene Niksich, Farida Corkery-Smith, and Cem Karsan (collectively, "Plaintiffs")[1] hereby move unopposed for final approval of the proposed Settlement (filed at Dkt. 74-1). On June 20, 2013, this Court granted preliminary approval of the Settlement. (Dkt. 83.) This Motion seeks entry of a Final Judgment and Order of Dismissal, submitted herewith, granting final approval of the Settlement. The Settlement resolves the derivative claims pending in this Court, as well as those currently pending in the Superior Court of the State of Washington, King County (collectively the "Derivative Actions").[2] Plaintiffs submit that the Settlement provides an excellent result for HQSM shareholders and easily satisfies the "fair, adequate, and reasonable" standard for final approval.

The Settlement is the result of substantial effort, vigorous advocacy, and months of hard-fought, arm's-length, mediator-guided negotiations conducted by skilled and experienced counsel. *See* Declaration of Brett D. Stecker, Louis Boyarsky and Michael J. Hynes in Support of Plaintiffs' Motion for Final Approval of Settlement and Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses ("Joint Decl." or "Joint Declaration") ¶¶ 37-38. As a result of the filing and prosecution of the Derivative Actions, as well as the Securities Action, HQSM's insurer has agreed to pay $2.75 million to HQSM shareholders, a meaningful and substantial benefit for HQSM shareholders. Moreover, had there not been the prosecution of the Derivative Actions it is likely that the settlement fund created would have been less than $2.75 million. Though the $2.75 million has already been received by HQSM, and HQSM used those funds to pay the settlement of the related Securities Action claims, those funds would have never been received by HQSM had the present Settlement not been reached, extinguishing the

---

[1] Unless otherwise defined herein, this motion adopts the definitions of all capitalized terms as provided in the Stipulation of Settlement dated May 6, 2013 (the "Stipulation").

[2] The Actions are linked by common factual allegations to a related securities class action, *Moomjy v. HQ Sustainable Maritime Industries, Inc.*, 2:11-cv-00726-RSL (the "Securities Action"). The Court issued an Order and Final Judgment that approved settlement of the Securities Action on March 21, 2013.

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL

- 1 -

1  shareholder derivative claims brought on HQSM's behalf against its current and former officers
2  and directors. Indeed, Defendants readily acknowledge that it was the litigation of the Derivative
3  Actions which provided the "[i]mpetus for a [g]lobal [r]esolution" and "contributed materially to
4  the timing and terms of the settlement of the [securities action]." (Individual Defs.' Submission
5  in Resp. to Order to Show Cause Relating to Approval of Proposed Settlement (Dkt. 78 at 3-4).)
6  The parties' mediator, Jed Melnick (the "Mediator"), a highly respected mediator with extensive
7  experience in the mediation of complex shareholder derivative actions acknowledged the same,
8  stating that, as a result of this Court's partial denial of Defendants' motion to dismiss,
9  Defendants faced serious litigation risk. (Dkt. 81 at 3.) Indeed, by comparison, Defendants
10 faced more pressure in the Derivative Actions than the Securities Action since a motion to
11 dismiss in the Securities Action was never fully briefed before settlement. As a result, the
12 Mediator also acknowledged that the global resolution of the Securities Action and the
13 Derivative Actions was a substantial factor in persuading Defendant's insurance carriers to
14 contribute to the settlement. Similarly, North River Insurance Company, one of two insurers
15 funding the settlement opined that it contributed funds to the monetary settlement "in significant
16 part due to developments in the Derivative Actions." *See* Notice of Filing Aff. Of Margaret M.
17 Sutton Regarding Order to Show Cause (Dkt. 79 at 5). Thus, had it not been for the Derivative
18 Actions it is likely the Settlement would have been smaller.

19        The Settlement is an outstanding resolution of this complex high-risk litigation and
20 Plaintiffs have conferred substantial benefits upon HQSM and its shareholders. HQSM received
21 the benefit of $2.75 million and the release of all securities class claims against it, in significant
22 part due to the filing, prosecution, and settlement of the Derivative Actions. Accordingly,
23 Plaintiffs' counsel recommends—based on their substantial experience in shareholder derivative
24 litigation and informed by their extensive investigation, rigorous evaluation of the strengths and
25 weaknesses of the claims and defenses, and comparison of the relative value of the Settlement
26 and the risks and rewards of continued litigation—that the Court approve the Settlement. *See*
27

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL                - 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

Joint Decl., ¶¶ 25, 39-42.  The substantial benefits achieved through the Settlement fully justify this Court's final approval of the Settlement as fair, adequate, and reasonable.

## I. BACKGROUND OF THE DERIVATIVE ACTIONS AND SETTLEMENT NEGOTIATIONS

For brevity, Plaintiffs refer the Court to the Joint Declaration for a detailed description of the procedural history of the Derivative Actions and settlement negotiations.  Joint Decl., ¶¶ 5-24; *see also* Stipulation of Settlement, Section I (Dkt. 74-1).

## II. THE SETTLEMENT WARRANTS FINAL APPROVAL

### A. The Standards for Approval of Shareholder Derivative Settlements

"There is a strong policy favoring compromises that resolve litigation, and case law in the Ninth Circuit reflects that strong policy."  *In re NVIDIA Corp. Derivative Litig.*, No. 06-6110, 2008 U.S. Dist. LEXIS 117351, at *6-7 (N.D. Cal. Dec. 22, 2008) (citations omitted); *MWS Wire Indus., Inc. v. Cal. Fine Wire Co.*, 797 F.2d 799, 802 (9th Cir. 1986) (recognizing an "overriding public interest in settling and quieting litigation.") (internal quotation marks and citation omitted).  Settlements of shareholder derivative actions are particularly favored because such litigation "is notoriously difficult and unpredictable."  *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (internal quotation marks and citation omitted).

The Court must determine whether the proposed settlement is "'fair, adequate, and reasonable'" when reviewing a proposed settlement under Rule 23.1 of the Federal Rules of Civil Procedure.  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995) (citation omitted); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (citation omitted).  The Ninth Circuit considers several factors in evaluating the fairness of the settlement, including: (i) the benefits conferred on the corporation; (ii) the risks of establishing liability and continued litigation; (iii) whether the settlement was a product of fraud or collusion; and (iv) the experience and views of counsel.  *See Pac. Enters.*, 47 F.3d at 377-79; *NVIDIA*, 2008 U.S. Dist. LEXIS 117351, at *8-12 (considering benefits to corporation, whether settlement

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL                            - 3 -                   LAW OFFICES OF
                                                                      CLIFFORD A. CANTOR, P.C.
                                                                           627 208th Ave. SE
                                                                        Sammamish, WA 98074-7033
                                                                      Tel: (425) 868-7813 ● Fax: (425) 732-3752

was product of fraud or collusion, risks of continued litigation, and counsel's belief that settlement was in best interest of company and its shareholders).

A strong initial presumption of fairness applies to proposed settlements reached by experienced counsel after arm's-length negotiations. *Hughes v. Microsoft Corp.*, No. 98-1646, 2001 U.S. Dist. LEXIS 5976, at *20-21 (W.D. Wash. Mar. 26, 2001) (Coughenour, J.) (great weight accorded to recommendations of experienced counsel most closely acquainted with facts). Accordingly:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*Officers for Justice*, 688 F.2d at 625 (citations omitted). In approving a settlement, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*. The arduous process by which the Settlement was reached makes clear that the negotiations were at arm's-length and devoid of fraud or collusion.

**B.   The Settlement Is Fair, Adequate, and Reasonable**

As a result of protracted arm's-length settlement negotiations between the Parties and with the substantial assistance of the Mediator, the Parties have agreed to a resolution of the Derivative Actions that all Parties agree provides substantial benefits to HQSM and its shareholders. *See* Stipulation at II, III (Dkt. 74-1). As discussed above, a global settlement of the Derivative Actions and the related Securities Action was an important consideration to the Defendants and their insurance carriers in obtaining the insurance carriers' contribution of $2.75

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL

- 4 -

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

1   million payment. *See In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994) (A
2   substantial benefit was created by the derivative action where the derivative suit was a causal
3   factor in Arthur Andersen's decision to contribute $1.75 million to the class settlement. Because
4   Oracle would otherwise have had to pay an additional $1.75 million to settle the consolidated
5   class action on the same terms, Arthur Andersen's contribution is a "substantial benefit" to
6   Oracle.).

7   Moreover, the separate payment by the insurers of the fee award was a key part of the
8   negotiations to ensure credit for the value the Derivative Actions contributed to the global
9   settlement of the Securities Action and Derivative Actions, without further diminishing any
10  payment to the Company's shareholders or causing the Company itself to make payment. Given
11  the Court's denial in part of Defendants' motions to dismiss in the federal Derivative Actions,
12  the pendency of the Washington State Derivative Action, the pendency of the Washington State
13  Derivative Plaintiffs' appeal to the Ninth Circuit Court of Appeals of the stay order, and the
14  pendency of the Delaware State Derivative Action, Defendants faced serious risk in defending
15  the Derivative Actions, especially considering that they were in different jurisdictions.
16  Defendants sought to resolve all these Actions, as well as the Securities Action, together as part
17  of a single global settlement of all claims and the settlement of the Derivative Actions
18  substantially contributed to the $2.75 million to be paid by the insurers to HQSM.[3]

19  In determining whether to approve the settlement of a shareholder derivative action,
20  "[t]he principal factor to consider ... is the benefit to [the company] as compared to the risks
21  posed by derivative litigation." *In re Apple Computer, Inc. Derivative Litig.*, No. 06-4128, 2008
22  U.S. Dist. LEXIS 108195, at *8 (N.D. Cal. Nov. 5, 2008) (citation omitted). As stated by
23  (i) Defendants, (ii) Defendants' insurance carrier, and (iii) the Mediator, the pendency of the

---

[3] That this Derivative Settlement is being presented to the Court after the Securities Action settlement should not cause the Court concern. While the ideal situation would have been to present a simultaneous settlement, logistical circumstances—including the need to coordinate with counsel for a later filed Delaware Action—resulted in the Securities Action settlement being finalized before the Derivative settlement.

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL      - 5 -

Law Offices of
Clifford A. Cantor, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752

Derivative Actions was one of the chief motivating factors that brought Defendants to discuss settlement. The settlement was achieved in significant part due to the developments in the Derivative Actions. Because the Federal Plaintiffs survived in part the Defendants' motion to dismiss, and the Washington State Plaintiffs appealed the Court's stay of discovery pursuant to SLUSA, the Actions posed substantial risks to defendants and were important factors in achieving a substantial benefit for HQSM and its shareholders.

The determination of a "reasonable" settlement is not susceptible to a mathematical equation yielding a particularized sum. Rather, "in any case there is a range of reasonableness with respect to a settlement." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). Courts in the Ninth Circuit have "long deferred to the private consensual decision of the parties" in evaluating the adequacy of a settlement amount. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citation omitted). In fact, the Court of Appeals has cautioned that evaluation of the settlement amount should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties," and that the settlement as a whole is fair, reasonable and adequate. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice*, 688 F.2d at 625). A proposed settlement may be acceptable even though it amounts to only "a fraction of the potential recovery" that might be available to the class members at trial. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Here, the $2.75 million settlement confers an immediate and valuable cash benefit to HQSM and its eligible shareholders. Given the complexities of this litigation, the dwindling assets available to satisfy a judgment, and the continued risks and expense if the Parties were to proceed through the completion of discovery, trial, and appeals, the Settlement represents a fair, adequate, and reasonable resolution of the litigation, including the Derivative Actions.

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL

- 6 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

### C. The Settlement Appropriately Balances the Risks and Benefits of Continued Litigation

In assessing the fairness, adequacy, and reasonableness of a settlement, a court should balance the benefits of the settlement against the continuing risks of litigation. *See NVIDIA*, 2008 U.S. Dist. LEXIS 117351, at *11; *Officers for Justice*, 688 F.2d at 624 (9th Cir. 1982) ("the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes'") (citations omitted). There is no question that derivative actions are complex and fraught with great risk. *See Cohn*, 375 F. Supp. 2d at 852 ("Settlements of shareholder derivative actions are particularly favored because such litigation 'is notoriously difficult and unpredictable.'") (internal quotation marks and citation omitted). Indeed, the Ninth Circuit, in affirming a district court's approval of a derivative settlement, aptly noted that "the odds of winning [a] derivative lawsuit [are] extremely small" because "derivative lawsuits are rarely successful." *Pac. Enters.*, 47 F.3d at 378 (citation omitted). This case was no different.

While Plaintiffs believe their claims have merit, there is a significant risk that they would recover nothing. Even though Plaintiffs prevailed in part at the motion-to-dismiss stage, they faced considerable challenges establishing liability on their breach-of-fiduciary-duty claims. *In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 967 (Del. Ch. 1996) (claim that directors are liable for oversight failures is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment"); *In re Pfizer Inc. S'holder Derivative Litig.*, 780 F. Supp. 2d 336, 342-43 (S.D.N.Y. 2011) ("daunting legal standard" for failure-of-oversight claims). This is particularly true here where the Defendants are located in China and conducting depositions and detailed discovery is dependent not only on enormous expense but the vagaries of foreign law impeding access to information.

Plaintiffs would also have had to overcome the protections afforded to Defendants under the business judgment rule, which establishes a strong presumption that directors acted on an informed basis, in good faith, and with the honest belief that actions were in the best interests of the corporation. *In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 746-47 (Del. Ch. 2005),

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL
- 7 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

*aff'd*, 906 A.2d 27 (Del. 2006). The difficulties posed by stringent legal standards increased the risk of establishing liability in the Derivative Actions and confirm that the Settlement is a favorable result.

Even a meritorious case can still be lost at trial, *see, e.g., In re JDS Uniphase Corp. Sec. Litig.*, No. 02-1486, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (after a lengthy trial, jury returned a verdict against plaintiffs and the action was dismissed); and even success at trial does not eliminate the risk. For example, in *In re Apple Computer Securities Litigation*, No. 84-20148, 1991 U.S. Dist. LEXIS 15608 (N.D. Cal. Sept. 6, 1991), a case litigated and tried in this Circuit, the jury rendered a verdict for plaintiffs after years of litigation and an extended trial. Based upon the jury's findings, recoverable damages would have exceeded $100 million. However, the district court overturned the verdict, entered judgment notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the corporate defendant. As another example, a class won a jury verdict and a motion for j.n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed. *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990).

In summary, the risks posed by continued litigation were substantial, and they would be present at every step of the litigation if it were to continue. *See In re Mfrs. Life Ins. Co. Premium Litig.*, MDL No. 1109, 1998 U.S. Dist. LEXIS 23217, at *17 (S.D. Cal. Dec. 21, 1998) ("even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement—which is not at all apparent—there is easily enough uncertainty in the mix to support settling the dispute rather than risking no recovery in future proceedings") (citation omitted). Given the obstacles and uncertainties inherent in this complex derivative litigation, the Settlement guarantees immediate, substantial, and lasting benefits and is unquestionably superior to the very real risk that HQSM might recover nothing after years of costly litigation. *See Apple*, 2008 U.S. Dist. LEXIS 108195, at *11 (settlement reasonable in light of substantial risks).

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL
- 8 -

**LAW OFFICES OF**
**CLIFFORD A. CANTOR, P.C.**
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

Based upon the record and applicable law, there were serious risks in overcoming potential defenses and in establishing liability. Even if liability were established, the determination of the amount of recoverable damages would still have posed significant issues and would have been subject to further litigation. Thus, the Settlement guarantees an excellent result with HQSM receiving over $2.75 million in financial benefits as opposed to continued expensive and uncertain litigation. Accordingly, the Settlement should be approved.

### D. The Settlement Is the Product of Arm's-Length, Mediator-Guided Negotiations Conducted by Experienced Counsel

"A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel[.]" *Hughes*, 2001 U.S. Dist. LEXIS 5976, at *20 (Coughenour, J.) (internal quotation marks and citation omitted); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004) (Rothstein, J.) (approving settlement "entered into in good faith, following arms-length and non-collusive negotiations."). Here, the Settlement is the product of months of arm's-length negotiations conducted by skilled and experienced counsel and supervised by a well-respected mediator. *See* Declaration of Jed Melnick, ¶¶ 3-8 (Dkt. 81).

The extensive settlement negotiations involved a rigorous evaluation of the strengths and weaknesses of the claims and defenses of the Parties' positions. *See* Joint Decl., ¶¶ 29-36. Plaintiffs' negotiation position was informed by careful analysis of the applicable law and a thorough evaluation of public documents and investigation materials. *Id*. At the time the Parties agreed to settle the Derivative Actions, Defendants' motion to dismiss had been partially denied and the Parties had engaged in extensive settlement negotiations. Before the commencement of the Derivative Actions, Plaintiffs also conducted extensive investigations of the allegations asserted, which continued after the filing of the Derivative Actions. Plaintiffs' significant evaluation and investigative efforts provided sufficient information to allow counsel to make an informed decision about the relative merits of each side's case and to confirm that the Settlement

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL
- 9 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

is in the best interests of HQSM and its shareholders.

### E. The Recommendation of Experienced Counsel Favors Approval

Experienced counsel, negotiating at arm's-length, have weighed the factors discussed above and endorse the Settlement. *See* Joint Decl., ¶¶ 39-42. The views of the attorneys actively conducting the litigation, while not conclusive, are "accorded considerable weight." *Hughes*, 2001 U.S. Dist. LEXIS 5976, at *21; *Officers for Justice*, 688 F.2d at 626 (internal quotation marks and citation omitted) (same); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) (citation omitted) (same); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.") (internal quotation marks and citation omitted). Courts give considerable weight to the opinions of counsel because counsel are "most closely acquainted with the facts of the underlying litigation." *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005) (internal quotation marks and citation omitted); *see also Glass v. UBS Fin. Servs., Inc.*, No. 06-4068, 2007 U.S. Dist. LEXIS 8476, at *15 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009). Thus, "the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *33 (internal quotation marks and citations omitted); *Pac. Enters.*, 47 F.3d at 378 ("Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.").

The Derivative Actions have been litigated and settled by experienced and competent counsel on both sides of the case. *See* Joint Decl., ¶¶ 48-49. Plaintiffs' counsel are experienced and well-known for their effectiveness in litigating and resolving complex shareholder actions. *Id.* Defendants were represented by skilled and experienced counsel in making the determination the Settlement is "in the best interests of HQSM and [its] Shareholders." *See* Stipulation §III

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL

- 10 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

(Dkt. 74-1). The fact that qualified and well-informed counsel endorse the Settlement as fair, adequate, and reasonable weighs in favor of approval. *See* Joint Decl., ¶¶ 48-49.

The assistance of a neutral and well-respected mediator, Mr. Melnick, also assured a sound result for HQSM and its shareholders. *In re AOL Time Warner S'holder Derivative Litig.*, No. 02-6302, 2009 U.S. Dist. LEXIS 124372, at *74 (S.D.N.Y. Nov. 9, 2009) ("a court-appointed mediator's involvement in settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure") (quoting *Cnty. of Suffolk v. Long Island Lighting Co.*, 907 F.2d 1295, 1323 (2d Cir. 1990)). Mr. Melnick is a respected mediator in complex litigation, including securities class actions and shareholder derivative actions. Melnick Decl., ¶ 2 (Dkt. 81). Mr. Melnick, with the full involvement of the Parties' counsel, rigorously oversaw the integrity of the settlement process by which the Parties negotiated the settlement and the fee award. Melnick Decl., ¶¶ 4-8. Accordingly, the Court should grant final approval.

### III. THE REACTION OF HQSM SHAREHOLDERS SUPPORTS FINAL APPROVAL OF THE SETTLEMENT

Another factor courts consider when determining whether to approve a settlement in the class-action context is the reaction of the class. *See Mego Fin.*, 213 F.3d at 459. "[T]he reaction of the class to the proffered settlement ... is perhaps the most significant factor to be weighed in considering its adequacy." *In re Rambus Inc. Derivative Litig.*, No. 06-3513, 2009 U.S. Dist. LEXIS 131845, at *10 (N.D. Cal. Jan. 20, 2009) (internal quotation marks and citation omitted). The Notice which was disseminated to HQSM shareholders in accordance with the Court's Preliminary Approval Order, advised HQSM shareholders that objections to any of the terms of the Settlement had to be filed with the Court by September 5, 2013. *See* Joint Decl., ¶ 41. Although that date has not yet passed, to date Plaintiffs are not aware of a single objection. *Id.*[4] Particularly in this age of increased shareholder activism, the fact that there are no objections from any shareholders, including sophisticated institutional investors, supports that the

---

[4] If any timely objections are received, Plaintiffs will address them in a reply brief.

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL

- 11 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

Settlement is fair, adequate, and reasonable and should be finally approved.

## IV.  CONCLUSION

For the reasons stated above, the Settlement should be granted final approval.

Dated: August 22, 2013

Respectively submitted,

s/ *Cliff Cantor*
By: Cliff Cantor, WSBA # 17893
LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98704-7033
Tel:   (425) 868-7813
Fax:   (425) 732-3752
Email: cliff.cantor@outlook.com

*Liaison counsel for plaintiffs*

GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy
Robert V. Prongay
Louis Boyarsky
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Tel:   (310) 201-9150
Fax:   (310) 201-9160

THE WEISER LAW FIRM, P.C.
Robert B. Weiser
Brett D. Stecker
Jeffrey J. Ciarlanto
Joseph M. Profy
121 N. Wayne Ave., Suite 100
Wayne, PA 19087
Tel:   (610) 225-2677
Fax:   (610) 225-2678

-and-

THE WEISER LAW FIRM, P.C.
Kathleen A. Herkenhoff
12707 High Bluff Dr., Suite 200
San Diego, CA 92130

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL

- 12 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 732-3752

```
Tel:   (858) 794-1441
Fax:   (858) 794-1450

FARUQI & FARUQI, LLP
Beth A. Keller
369 Lexington Ave., 10th Floor
New York, NY 10017
Tel:   (212) 983-9330
Fax:   (212) 983-9331

        -and-

FARUQI & FARUQI, LLP
Michael Hynes
101 Greenwood Ave., Suite 600
Jenkintown, PA 19046
Tel:   (215) 277-5770
Fax:   (215) 277-5771
```

*Co-lead counsel for Plaintiffs*

## Certificate of Service

I certify that, on the date stamped above, I caused the foregoing, together with a proposed order, to be filed with the Clerk of the Court via the CM/ECF system, which will cause notice of filing to be emailed to counsel of record for all parties.

s/ Cliff Cantor, WSBA # 17893

PLS.' MOT. FOR FINAL APPROVAL
Lead Case No. C11-910 RSL

- 13 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 • Fax: (425) 732-3752